FILED
2007 Mar-29 PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBRA P. JOHNSON,** | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | 2:05-cv-02594-JHH |
| **THE BOARD OF TRUSTEES OF** | ) | |
| **THE UNIVERSITY OF ALABAMA,** | ) | |
| DEFENDANT. | | |

### MEMORANDUM OPINION

The court has before it the January 26, 2007 motion (doc. #10) of defendant, the Board of Trustees of the University of Alabama ("Board" or "UAB") for summary judgment and the brief (doc. #11) in support thereof. Having considered the brief and evidentiary submission (doc. #10), the court finds that defendant's motion (doc. #10) for summary judgment is due to be granted in its entirety for the reasons outlined below.

### I.   INTRODUCTION

Plaintiff Debra Johnson ("Johnson") initiated this lawsuit (doc. #1) on December 22, 2005 by filing a complaint in this court. The complaint asserts a claim for race discrimination under Title VII,[1] the Civil Rights Act of 1964, as amended,

---

[1] The court recognizes that the reference to Title XII in the Complaint is a typographical error. (See Compl., Count One at ¶ 1.)

42 U.S.C. § 2000e *et seq.* (Count One) and discrimination under the Americans with Disabilities Act ("ADA") of 1990, as amended, 42 U.S.C.A. § 12101 *et seq.* (Count Two).  (<u>See</u> <u>generally</u> Compl.)

Defendant Board's January 26, 2007 motion (doc. #10) for summary judgment asserts that no genuine issue of material fact exists and that the Board is entitled to judgment as a matter of law as to all claims asserted against it.  Only the Board has filed a brief (doc. #11) and submitted evidence[2] (doc. #10) in support of its position concerning the pending motion for summary judgment.  Although the plaintiff was provided with the opportunity to oppose the summary judgment motion by order (doc. #12) dated January 29, 2007,[3] no opposition brief or evidence has been filed to date.

The motion (doc. #10) for summary judgment is considered herein.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp.</u>

---

[2] The Board submitted: the affidavit of Toni Gaston, with exhibits (Exhibit A); the affidavit of Anita Bonasera, with exhibits (Exhibit B); and the deposition of plaintiff Debra Johnson (volumes I and II), with exhibits (Exhibit C).

[3] That order set forth: "Any evidentiary matters or brief the party opposing the motion intends to rely on must be filed by February 19, 2007."  (Doc. #12.)

v. Catrett, 477 U.S. 317, 322 (1986); see also Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman, 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  See Chapman, 229 F.3d at 1023; see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; see also Chapman, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See Anderson, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on

whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17, citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial). See Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving

party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. See Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. See Lewis v. Casey, 518 U.S. 343, 358 (1996), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III.   RELEVANT UNDISPUTED FACTS[4]

Plaintiff Debra Johnson ("Johnson") began working for the University of Alabama ("UAB") in 2002 in the Center for Psychiatric Medicine under the

---

[4] Despite being provided the opportunity to do so, plaintiff has not filed any brief or evidence opposing defendant's motion (doc. #10) for summary judgment. See discussion supra Section I. Therefore, the facts as stated herein are the facts as set forth in the evidence presented by the Board. See Astiazarian v. Miami-Dade County, 2005 WL 2456760, No. 04-20585CIVGRAHAM at *2, n.1, citing United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1103, n.6 (11th Cir. 2004) (stating that the facts as set forth in movant's statement may be deemed admitted to the extent that they are supported by specific references to the record).

supervision of Charmaine Prosch.  (See Vol. I of Pl. Dep. at 31-32.)[5]   While working at the Center for Psychiatric Medicine, Johnson was disciplined for: (1) giving a drug to a patient without permission (see Def.'s Exh. 5 to Vol. I of Pl. Dep.); (2) projecting religious thoughts and beliefs on to a patient (see Def.'s Exh. 6 to Vol. I of Pl. Dep.); (3) violating attendance policies[6] (see Def.'s Exh. 8 to Vol. I of Pl. Dep.); (3) failing to complete incident reports (see id.); and (4) failing to follow UAB standards of care (see id.).  In response to these written disciplines, Johnson filed a grievance.  Part of the resolution of the grievance required Johnson to "apply for a transfer to another unit within UAB hospital."  (Def.'s Exh. 8 to Vol. I of Pl. Dep.)

Thereafter, Johnson was transferred to the unit supervised by Toni Gaston, Nurse Manager.  (See Vol. I of Pl. Dep. at 75-76.)  Gaston had interviewed Johnson and decided to hire her into the unit effective August 2003.  (See id. at 78; see also Gaston Aff. at ¶ 3.)  However, Johnson continued to have problems with her attendance.  As early as February 2004, Johnson began to receive disciplinary actions issued pursuant to UAB's attendance policy.  (See Exh. 1 to Gaston Aff.)  Again on

---

[5] Plaintiff's deposition was taken on August 16, 2006 and December 20, 2006, by agreement of the parties.  (See Doc. #11 at 1, n.1.)  The August deposition is referred to herein as Volume I and the December deposition is referred to herein as Volume II.

[6] UAB's attendance policy provides that patient care employees, including registered nurses, accrue points for unplanned absences or incidents of being late to work.  (See Exh. 4 to Gaston Aff.)  Plaintiff was, at all relevant times, aware of this policy.  (See Vol. I of Pl. Dep. at 71-74.)

March 18,[7] April 14,[8] April 22,[9] and May 2,[10] Johnson was issued progressive disciplinary actions pursuant to the attendance policy. (See id.) Although Johnson had indicated that her tardiness at time stemmed from her medical conditions, she failed to provide documentation regarding how the tardiness was related to the medical conditions. (See Def.'s Exh. 19 to Vol. II of Pl. Dep.) Gaston wrote Johnson

---

[7] On this date, Johnson was notified by letter that she had accrued 11.5 occurrences as defined by the UAB policy. (See Def.'s Exh. 13 to Vol. II of Pl. Dep.) Plaintiff indicated that she read and received the written counseling regarding attendance. (See id.; see also Vol. II of Pl. Dep. at 50.)

[8] On this date, Johnson was notified by letter that "if you receive an additional .5 points [in accordance with UAB's attendance policy], termination will occur. If any of your points are related to any medical condition that you might have, it is imperative that you provide written documentation from a medical physician immediately. All documentation provided will be evaluated." (Def.'s Exh. 14 to Vol. II of Pl. Dep.) Johnson initialed her receipt of this document. (See id.; see also Vol. II of Pl. Dep. at 51.)

Johnson responded by written note on April 17, 2004: "I had Dr. Chindalore fax a short note confirming she treats my fibromyalgia. I brought a note from Dr. Mishra who treats my depression. I did not have time to provide much documentation but can do so if needed. My pain and sleep disturbances and other symptoms such as chronic fatigue are associated with my condition. I make every effort to be on time to work but some days I have problems associated with my symptoms. My rheumatologist can provide more information if needed." (Def.'s Exh. 15 to Vol. II of Pl. Dep.)

[9] On this date, Johnson was again notified by letter that "you currently have 14.5 points. You have one week to produce medical documentation for consideration justifying the reason for the accrued points. Documentation is due in my office no later than 5PM on April 28, 2004. If no documentation for consideration is received by this deadline termination will occur." (Def.'s Exh. 16 to Vol. II of Pl. Dep.) Plaintiff indicated that she read and received the memorandum regarding the time and attendance policy. (See id.)

In response to this letter, Johnson produced a doctor's note written on a prescription pad. (See Def.'s Exh. 17 to Vol. II of Pl. Dep.) That note, dated April 26, 2004, states: "Patient has fibromyalgia, [illegible] and her periodic flare-ups which may need her to get to work late." (Id.; see also Vol. II of Pl. Dep. at 55.)

[10] Following this discipline, Johnson presented UAB with a letter from Dr. Chindalore. (See Def.'s Exh. 18 to Vol. II of Pl. Dep.) "She has a history of fibromyalgia, back pain, arthralgias. She also has a history of irritable bowel syndrome. She has chronic fatigue and insomnia too. I have been seeing her for almost 2 years now. The patient has a significant disability due to these conditions and may have to come to work late periodically." (Id.)

a letter on May 27, 2004, informing her that:

> As of May 11, 2004 you had accumulated 16.5 occurrences according to the hospital time and attendance policy which exceeded the maximum allowable limit. Most of your occurrences were the result of you arriving late for work . . . the medical information that has been obtained does not adequately explain your excessive tardiness . . . you will be given a final opportunity to improve your attendance. Please be aware that your prior occasions of tardiness will not be excused, nor will future, unapproved incidences of tardiness. You should begin preparing for work well in advance of your scheduled shift if you believe that you will require additional time to avoid further tardiness . . . the seven work shifts you missed will be considered a suspension without pay. Please be aware that if you incur three additional occasions as defined by the hospital attendance policy, before dropping below eleven total occurrences,[11] you will be subject to immediate dismissal.

(Id.)

Despite this final warning, Johnson continued to accrue absences and instances of tardiness. By December 2004, Johnson had accumulated 18.5 points under UAB's attendance policy; her employment was then terminated. (See Gaston Aff. at ¶ 7; see also Bonasera Aff. at ¶ 7.) Johnson had not requested any accommodation related to her purported disability. (See id. at ¶ 15.) Instead, she had produced letters claiming disability without outlining any reasonable accommodation she would need to allow her to perform her job and arrive at work on time. (See Gaston Aff. at ¶ 16; see also Bonasera Aff. at ¶ 10 and Exh. 1 to Bonasera Aff. at UAB048-UAB050.)

Plaintiff believes that she was terminated because of her race, white, and

---

[11] UAB's attendance policy provides than an employee may be terminated upon incurring eleven points, or instances of tardiness or unexcused absence, in a rolling 12-month period. (See Gaston Aff. at ¶ 6; see also Bonasera Aff. at ¶ 5.)

8

because of her disability.  (See Vol. II of Pl. Dep. at 29.)

In support of her race discrimination claim, Johnson testified that Melinda McMorris and Monique Campbell, both African American, "came in late all the time" but were not likewise disciplined and terminated.  (See Vol. II of Pl. Dep. at 30, 35-36.)  However, Johnson has not reviewed their attendance records or personnel files.  (See id. at 30-31.)  In fact, neither McMorris nor Campbell had a record comparable to Johnson's.  (See Exhs. 2, 3 to Gaston Aff.)

In support of her claim that she was discriminated against because of her disability, Johnson states that her problems with tardiness were related to health problems.  (See Def.'s Exh. 11 to Vol. II of Pl. Dep.)  However, she also notes that:

> Bonasero [of Human Resources] informed me I needed good documentation to excuse my tardiness and no one had ever proven it yet.  I was informed that the UAB Resource Center could help me avoid future tardiness by budgeting my time in a letter from my nurse manager, Toni Gaston, dated August 29, 2004.  Were they going to teach my bowels how to manage time? . . . Gaston gave me until Monday to provide her with documentation [that I had a disability which required accommodation].  This was all verbal . . .

(Id.)

## IV.  APPLICABLE LAW AND SUBSTANTIVE ANALYSIS

Plaintiff's complaint alleges that the Board discriminated against her because of her disability and her race when it terminated her employment.  (See generally Compl.)  Defendant's motion for summary judgment, as amplified in its brief in

support thereof, asserts that: (1) the plaintiff's ADA claim for damages is barred by defendant's Eleventh Amendment immunity; (2) even if plaintiff's ADA claim was not barred by state immunity, plaintiff could not show that she is a qualified individual with a disability or that she was denied a reasonable accommodation; (3) plaintiff's claim of race discrimination under Title VII must be dismissed because she cannot show that a similarly situated person of a different race had the same record of attendance policy violations yet was treated differently; and (4) the undisputed facts of record show that defendant had a legitimate, non-discriminatory reason for terminating plaintiff's employment, which plaintiff cannot show to be pretextual. Plaintiff was in gross violation of the defendant's Hospital Attendance Policy; no other similarly situated employee had incurred a similar record under that policy. (See Doc. # 10 at 1-2.)

  **A.**  **Americans with Disabilities Act Claim**

    **1.**  **The basics of the Americans with Disabilities Act.**

The Americans with Disabilities Act ("ADA") provides that employers shall not discriminate against qualified individuals with a disability because of that disability. 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) she is disabled; (2) she was a qualified individual at the relevant time; and (3) she was discriminated

against because of her disability.  See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability – unless doing so would impose undue hardship on the employer.  42 U.S.C. § 12112(b)(5)(A); see also Lucas, 257 F.3d at 1255.  "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions."  Id. at 1255-56; see also Earl v. Mervyn's, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) and Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997).  An employee's failure to request a reasonable accommodation is fatal to the prima facie case; "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."  Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 (11th Cir. 1999); see also Warren v. Volusia County, Florida, 188 Fed. Appx. 859 at *863, No. 05-16411 (11th Cir. July 5, 2006).

## 2. The Board is entitled to Eleventh Amendment immunity.

The Supreme Court has held that, by virtue of the Eleventh Amendment,[12] employees of the State may not recover money damages for the State's failure to comply with the provisions of Title I of the ADA.  See Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 360 (2001).  Although Congress may abrogate a State's Eleventh Amendment immunity, it has not done so within the ADA.  See id. at 360, 364.

Moreover, courts recognize that the Board of Trustees of the University of Alabama is an arm of the State, and thus entitled to state immunity.  See id. at 360; see also Hutchinson v. Board of Trustees, 256 So.2d 281 (Ala. 1971) ("After careful and diligent study of the law of 'governmental immunity,' we are convinced that, even though the rule has been criticized as being harsh and archaic, the people of Alabama have put it in their Constitution and this Court, in prior decisions, had interpreted the 'governmental immunity' provision on several occasions and has

---

[12] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although by its terms the Eleventh Amendment applies only to suits against a State by citizens of another State, Supreme Court cases have extended the Amendment's applicability to suits by citizens against their own States.  See Garrett, 531 U.S. at 363, citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000) and College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-70 (1999).

arrived at the same conclusion as did the Court of Civil Appeals") and Cox v. Board of Trustees, 49 So. 814 (1909) ("Public institutions that are created by the state purely for charitable or educational purposes are part of the state and are not subject to be sued").

Therefore, defendant's motion for summary judgment is due to be granted on plaintiff's Americans with Disabilities Act claim because the Board is entitled to Eleventh Amendment immunity.

### 3.     Plaintiff has failed to present a prima facie case of disability discrimination.

Even had the Board *not* been entitled to Eleventh Amendment immunity, plaintiff's ADA claim would nevertheless fail because she has completely failed to establish a prima facie case of discrimination.  Apparently (and without the benefit of any brief on plaintiff's behalf), plaintiff believes that she was entitled to a transfer to the academic side of the hospital and/or to an accommodation that she be permitted to arrive late to work whenever necessary.  (See Compl., Count Two, ¶¶ 4-5; see also Exh. 1 to Gaston Aff. and Def.'s Exh. 14-19 to Vol. II of Pl. Dep.)  However, Johnson never specifically requested either one of these accommodations.[13]  (See Gaston Aff.

---

[13] Reading between the lines (or, perhaps more accurately, *creating* the lines), plaintiff may believe that she was exempt from the specific mandate of the Act because the Board knew that Johnson had medical conditions which *she* considered to be disabling and requiring accommodation within the meaning of the ADA.  This theory, however, has heretofore been considered and rejected by the Eleventh Circuit.  See Warren v. Volusia County, Florida, 188 Fed. Appx. 859, No. 05-16411, at *860, 863 (11th

at ¶ 16; see also Bonasera Aff. at ¶ 10 and Exh. 1 to Bonasera Aff. at UAB048-UAB050.)  Moreover, there is scant evidence that Johnson is actually disabled within the meaning of the Act, or that she, even with the "reasonable" accommodations "requested," would have been able to perform the essential functions of her job as a registered nurse.  See, e.g., Wood v. Green, 323 F.3d 1309, 1313 (11th Cir. 2003) ("[R]easonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question"); 29 C.F.R. § 1630.2 (o)(1)(ii) ("The term reasonable accommodations means . . . modifications or adjustments to the work environment . . . that enable a qualified individual with a disability to perform the essential functions of the position"); Hypes v. First Commerce Corp., 134 F.3d 721, 727 (5th Cir. 1998) ("[R]egular attendance is an essential function of most jobs").

Therefore, for these additional reasons, defendant's motion for summary judgment is due to be granted on plaintiff's Americans with Disabilities Act claim.

---

Cir. July 5, 2006) (Holding that contrary to plaintiff's argument that medical documentation triggers the employer's duty to engage in the interactive process to help the "disabled" employee devise accommodations, the burden is entirely on the plaintiff to ask for a reasonable accommodation).

**B.    Title VII Race Discrimination Claim**

    **1.    Plaintiff has failed to establish a prima facie case of race discrimination.**

A plaintiff may establish a prima facie case of discrimination by either direct or circumstantial evidence. See Maynard v. Bd. of Regents of the Div. of Universities of the Flas. Dept. of Ed., 342 F.3d 1281, 1288 (11th Cir. 2003); see also Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999). Here, the plaintiff has no direct evidence of discrimination.[14] Therefore, her claim is governed by the shifting burden of proof analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Under the McDonnell Douglas three step burden shifting framework, the plaintiff carries the initial burden of establishing a prima facie case of race discrimination. McDonnell Douglas, 411 U.S. at 802. The prima facie case is established when a plaintiff proves that: (1) she is a member of a protected class; (2) she was subjected

---

[14] Direct evidence is that which, if believed, proves the existence of a fact without inference or presumption. See Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997). As Eleventh Circuit precedent illustrates, "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" race constitute direct evidence of discrimination. Rojas v. Florida, 285 F.3d 1339, 1342, n.2 (11th Cir. 1997), quoting Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (citations and quotations omitted). Moreover, the Eleventh Circuit has held that remarks unrelated to the decision-making process itself are not direct evidence of discrimination. See E.E.O.C. v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990). Here, the only comment referring to plaintiff's race (calling Johnson an "inbred, white hillbilly") (see Vol. II of Pl. Dep. at 37) does not correlate directly to an intent to discriminate on the basis of race, nor was it made by the decision-maker in this case.

to an adverse employment action; (3) her employer treated similarly situated employees who were not members of the plaintiff's class more favorably; and (4) she was qualified for the job.  See Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842 (11th Cir. 2000).

Plaintiff has established the first and second prongs of her prima facie case. The court assumes, without deciding, that she has met the fourth prong of her prima facie case.  However, Johnson completely fails to present the court with a proper comparator.  She testifies by deposition that Melinda McMorris and Monique Campbell, both African American, "came in late all the time" but were not likewise disciplined and terminated.[15]  (See Vol. II of Pl. Dep. at 30, 35-36.)  However, the undisputed evidence clearly establishes that Johnson never reviewed the records or personnel files of McMorris and Campbell (see Vol. II of Pl. Dep. at 30-31) *and* that in fact, neither McMorris nor Campbell had a record of excessive absenteeism and tardiness comparable to Johnson's.  (See Exhs. 2, 3 to Gaston Aff.)

Therefore, defendant's motion for summary judgment as it relates to plaintiff's Title VII race discrimination claim is due to be granted.

---

[15] In her deposition, Johnson cites to other individuals within the Hospital who were not subject to termination due to excessive absenteeism and tardiness. (See Vol. II of Pl. Dep. at 29-32, 35-36, 42-44.) However, those individuals are not proper comparators. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997); Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (the comparator's misconduct must be nearly identical to plaintiff's) and Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999).

### 2. Plaintiff has failed to establish pretext.

Even had the plaintiff established a prima facie case of race discrimination, her claim would nevertheless fail. The Board has presented evidence that Johnson's employment was terminated because she had incurred 18.5 points for tardiness or absence as defined by UAB's attendance policy. (See Gaston Aff. at ¶ 7; see also Bonasera Aff. at ¶ 7.) This articulated reason satisfies the Board's burden of production. See McDonnell Douglas, 411 U.S. at 802; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). Therefore, the burden shifts back to plaintiff to establish that the proffered reason was merely a pretext and that the true reason for the decision was discrimination. See id. at 148. However, there is absolutely no evidence before the court that the Board used Johnson's excessive absenteeism and tardiness as a pretext to discriminate against her because of her race.[16]

Therefore, for these additional reasons, defendant's motion for summary judgment on plaintiff's race discrimination claim is due to be granted.

## V. Conclusion

In summary, the court finds that no material issues of fact remain and that

---

[16] See One Piece of Real Property, 363 F.3d at 1101-02 ("The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials").

defendant the Board of Trustees of the University of Alabama is entitled to judgment as a matter of law as to all claims asserted by plaintiff.

A separate order will be entered.

**DONE** this the ___29th___ day of March, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE